RECEIVED
BY MAIL
NOV 15 2004
CLERK, US DIST. COURT
ST. PAUL, MN
CR02-294 DSD/SRN

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

Alexander Malave,
Movant/Defendant,

v.

UNITED STATES OF AMERICA,
Respondant/Plaintiff.

Criminal Case No.#02-294(DSD)
Civil Case No.#04-3565(DSD)

**Movant's Rebuttal to Government's Opposition Brief**

## Introduction

Now comes the Movant, Alexander Malave, untrained in law, unable to bring a perfect rebuttal, proceeding as a pro se litigant as defined in Haines v. Kerner, 404 U.S. 519 (1972), and respectfully submits the following rebuttals to the government's opposition papers to the Movant's motion to vacate, set aside, or correct sentence filed pursuant to Title 28 U.S.C. §2255.

## Rebuttal Arguments

As an initial matter the movant would like to turn the honorable court's attention to the fact that on August 16, 2004, this honorable ordered the government to respond to the Movant's §2255 pleadings thirty (30) days after the Movant filed an ammended version of those pleadings with the Clerk of the Court. On September 1, 2004, the Movant filed an amended version of his §2255 pleadings with the Clerk of the Court in compliance with the honorable court's August 16th order. On November 2, 2004 the government filed a responsive pleading in regard to the Movant's §2255 pleadings. These opposition papers were filed nearly thirty (30) days after the time mandated by this honorable court in its August 16th order. It is the Movant contention that the government's responsive pleadings are contemptuous, and the government's pleadings such be disregarded as a result.

The reason the honorable court orders time constraints in litigation

SCANNED
NOV 15 2004
U.S. DISTRICT COURT ST. PAUL

is to keep the playing field level. The Movant in this action is already considerably disadvantaged on account of his current social status and situation. One would think that the Federal Government having infinitely more resources and ability than the Movant would be able to respond to a pro se pleading within the time mandated by the court pursuant a written court order. Allowing the government to respond at anytime it feels convenient has placed a tremendous amount of strain on the Movant's already limited resoures. In that, the "jailhouse" assistance used by the Movant is also currently entrenched in its own battles with the government. The Movant. therefore, request that the honorable court hold the government's pleading as contemptuous, and disregard the government's responsive pleadings. An example must be made here so that the government made to respect the rules of legal engagement. Also, the Movant believes a reprimand of some sort is in order so that as, officers of the court, the government's attorneys, be made to understand that it is totally unacceptable to tarnish the integrity of the court by intentionally taking advantage of weaker, less educated, and less resourceful opponents.

Second, the movant would also stongly reaffirm to this honorable court that, not only was the Movant's firearm enhancement contested, but also the Movant never stipulated to any drug quanities attributed in Count One of his indictment. That count, as well as the drug amounts attributed to that count, were dismissed by motion of the government. (See Judgement and Commitment Order). The Movant assures the honorable court that the drug amounts in said count were never stipulated to by the Movant.

**Rebuttal to Government's Retroactivity Position**

The government first position is that the landmark decision rendered in Blakely v. Washington, 159 L.Ed 2d 403 (2004) should not be applied retroactively to case on collateral review, because historically the Supreme Court has " long held that its new constitutional decisions are not necessarily appli-

cable to proceedings that had been copleted when the new decisions were rendered." (See Government Response, p.g. 2). The government went on to cited a long list of United States Supreme Court cases in an attempt to give this position standing.

The fundamental flaw with the government's position is that all the cases cited in the government's response were deemed non-retroactive based on the fact that none of those cases raised issues that " ... implicated fundamental fairness in away that seriously affects the likelihood of an accurate conviction. ". Custodial interrogation rules, prophlatic sentencing rules, guilty plea acceptance rules, identification procedures, interrogation rules, failure to testify claims, and exclusionary rules; all have been deemed to fall outside both of the narrow exception provided by virtue of the ruling in Teague v. Lane, 428 U.S. 288 (1989).

The decision rendered in Blakely v. Washington is a horse of another color and breed. The Blakely Court itself illuminates this distinguishing factor(s) by announcing in it opinion that every factor, not plead guilty to or found by a judge or jury, which could increase a defendant's sentence beyond the base guideline offense level; (1) either must be stipulated to by the defendant via a vaild plea agreement, or (2) found applicable beyond a reasonable doubt by a judge or jury. Unlike the issues cited in government's response Blakely deals with the fundamental right, guaranteed under the Sixth Amendment, to have every factor that can increase ones penalty beyond what is prescribed by law exposed to reasonable doubt standards, and " not the civil ideal[s] of adminstrative perfection ". (See Blakely v. Washington, supra, 159 L.Ed. at 421-22). This is an issue that weighs heavy on respect for citizens' Sixth Amendment rights, and stikes at the core of fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. Again, none of the Supreme Court cases cited in the government's response touch on such a

fundamental and paramount issue, nor do those cases have anything to do with the likelihood of an accurate conviction. This is why the Supreme Court deemed those decisions not to have retrocactive affect, but Blakely is definitely another breed which arguably has retroactive implications.

Arguendo, if one were to adopt the new rule position offered by the the government, it is clear that Blakely fits squarely within the second exception of Teague v. Lane, supra. What is more fundamental than ones inherit Sixth Amendment rights? What aspect of the adminstration of criminal justice bears more on the accuracy of a criminal conviction, than to have those factors which would increase a citizen's punishment for crimes beyond the bounds prescribed by law proven beyond a reasonable doubt? The Movant respectfully suggest that it would be far more intelligent and wise to place the Blakely decision within the second exception of Teague, rather than attempt to justify why it will not fit.

If the honorable court chooses to adopt the government's new rule position, then the Movant would entreat the honorable court to accept the Movant's contention that the ruling handed-down in Blakely fits squarely within the second exception of Teague which automatically qualifies Blakely to apply to case on collateral review. This would give the honorable court ample authority to apply the wisdom announced in Blakely to the instant case.

The other critical flaw in the governments non-retroactivity position is the fact that government failed to fully develop the scenerio of what happens if this honorable court deems that Blakely is in fact not new, but is nothing more than a clarification of Apprendi v. New Jersey, 530 U.S. 466 (2000). If this is found to be the caseby the honorable court, then another set of retroactive test must be examined to determine Blakely's retroactive affects.

As stated on page five of the Movant §2255 Memorandum in Support, in

spite of the general non-retroactive assumption announced in Teague for new consitutional rulings, or the two-prong exception test announced in Teague. The Teague Court plainly expressed that the doctrine dictated in their opinion would have no affect on ruling that were not truly new, but merely clarified standing precedent; and the ruling affected substantive rights. ( See Teague v. Lane, 489 U.S. 288 (1989); Bousley v. U.S., 523 U.S. 614, 620 (1998); and Shirio v. Summerlin, 159 L.Ed 2d 442, 448 (2004)). It is abundantly clear that the opinion rendered in Blakely is substantive, bedrock, and certainly not new. The Blakely decision for all practically purposes is nothing but a clarification of how the doctrine announced in Apprendi is to be understood and applied to criminal cases.

This also appears to be the same rationale arrived at by the Eighth Circuit Court of Appeals in U.S. v. Pirani, Case No.#03-2871 (August 5, 2004). There the honorable court stated in relevant part:

" Properly viewed Blakely does not announce a new rule of law for the circuit courts to agree or disagree upon, but recast our understanding of Apprendi by clarifying the meaning of the phrase ' statutory maximum '. ".

The Blakely Court itself appears to affirm this line of reasoning in its own words when it stated:

" This case requires us to apply the rule we expressed in Apprendi v. New Jersey, 530 U.S. 466 ... (2000)." ( Blakely, supra, 159 L.Ed. 2d at 412); Also see U.S. v. Ameline, Case No.#02-30326, Original Opinion, at p.g. 10 (9th Cir. July 21, 2004)).

It would be a far stretch to suggest to the honorable court at this point that the decision rendered in Blakely was something other than a clarification of old precedent. It would be an even farther stretch to suggest to the honorable court that the legal princples clarified in Blakely, being directly connected

to ones liberty interest, are not substantive and bedrock in nature. The concept of criminal justice which requires factors that could increase an indiviuals sentence to be exposed to reasonable doubt scrutiny is guarunteed under the Fifth and Sixth Amendment of the United States Constitution, and without question is fundamental and substative under any reasonable understanding and application of justice.

If the honorable court agrees with the government that the decision rendered in Blakely is not a new rule, then the Movant would entreat the honorable court to recognize that the Blakely ruling is substantive and bedrock. A ruling that clarifies Apprendi, ans involves fundamental constitutional princples that should be applied to all criminal defendants both prospectively and retrospectively.

The government also attempted to liken the decision rendered in Schriro v. Summerlin, 159 L.Ed. 2d 442 to the decision given in Blakely. The government took this position erroneously hoping that Blakely would share the same non-retroactive fate as Summerlin. This was obviously not a well thought out line of reasoning, and should prove to significantly weaken the government's postition.

Comparing Blakely to Summerlin is like comparing apples and oranges. The Blakely decision is highly distinguishable from decision rendered in Summerlin, because Blakely addressed "reasonable doubt" standards while Summerlin only addressed the jury-trial component. The Summerlin Courts never ventured into the reasonable doubt issue, because Arizona law already required aggravating factors to be proved beyond a reasonable doubt. That aspect of Apprendi was not at issue, and the main issue of Summerlin, like its predecessor Ring v. Arizona, 536 U.S. 584 (2002), was primarily focused on deciding aggravating factors to the ceiling of a given statutory range by a jury. Blakely on the other hand dealt primarily with exposing factors the could increase a defendant's sentence **above the relevant statutory maximum** to reasonable doubt standards.

This is just the first distinguishable factor between Blakely and Summerlin.

The next factor that distinguishes Blakely from Summerlin in terms of retroactive application lies in the precedent that each case relied on to arrive at its conclusion. While Summerlin relied on Ring, Blakely relied on Apprendi to arrive at its conclusion. This is critical because the opinion rendered in Ring was deemed a new rule that did not fit squarely within one of the exceptions set-out in Teague. This analysis therefore cause Ring not to apply retroactively to Summerlin. Blakely on the other hand arguably is not relying on anything new, but in fact is only clarifying old precedent (Apprendi). This would automatically make the decision rendered in Blakely back to the date Apprendi was handed down by the Supreme Court.

The difference between Blakely and Summerlin are crystal clear, and any first year law student can distinguish the two decision without much effort. At first glance one might be lead to believe that Blakely and Summerlin are so closely related that they must share the same fate in respect to the issue of retroactivity. Yet, when a second glance is taken one can clearly see that Blakely and Summerlin are distantly related at best, and are not closely related enough to share the same non-retroactivity fate. Based on these distinguishable factors the government's assumption losses its legs, and therefore cannot stand.

**Conclusion**

Based on the foregoing the Movant, Alexander Malave, respectfully request that this honorable court grant the relief being requested in the Movant §2255 motion in spite of the arguments advanced by the government.

Dated: 11-10-04

Respectfully Submitted,

[signature]

Alexander Malave